**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **THE OPPORTUNITY FUND, LLC** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:11-CV-528** |
| | : | |
| **v.** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **EPITOME SYSTEMS, INC.,** *et al.*, | : | **Magistrate Judge Elizabeth** |
| | : | **Preston Deavers** |
| **Defendants.** | : | |

## OPINION & ORDER

## I. INTRODUCTION

This matter is before the Court on Defendant Savana, Inc.'s ("Savana") Motion to Dismiss the Amended Complaint Pursuant to Rules 12(B)(2), 12(B)(3), and 12(B)(6) of the Federal Rules of Civil Procedure ("Motion"). (Doc. 34.) For the reasons stated below, Defendant's Motion is **GRANTED** in part and **DENIED** in part.

## II. BACKGROUND

In May 2008, Plaintiff, The Opportunity Fund, LLC ("Opportunity Fund"), an Ohio company, became an "investing entity" in Epitome Systems, Inc. ("Epitome"), a Delaware corporation based in Pennsylvania that provided client companies with business information processing services. This transaction was memorialized with a Loan and Security Agreement that granted some number of investing entities,[1] including Opportunity Fund, a security interest in Epitome's assets as collateral for funds lent. (Doc. 26, Ex. A.) According to the terms of the Agreement, collateral assets consisted of a comprehensive list of Epitome's current and future

---

[1] The text of the document suggests the presence of at least one other investing entity: Vision Opportunity Master Fund, Ltd.

personal property, including intangibles like stock, intellectual property, computer software rights, and customer lists.

In July 2008, in connection with the Loan and Security Agreement, Epitome executed a Secured Promissory Note (the "Note") (Doc. 26, Ex. B) in which it promised to repay Opportunity Fund the lent sum of $100,000 plus interest on or before August 31, 2008.  The Note contains a successor clause, which states: "This Note shall be binding upon Maker [Epitome] and its successors and shall inure to the benefit of the Payee [Opportunity Fund] and its successors and permitted assigns." (Doc. 26, Ex. B at 6.)    The Note also contains a choice of law and forum selection clause which directs that the laws of New York State govern "[a]ll questions concerning the construction, validity, enforcement and interpretation" of the Note, and that "all legal proceedings concerning the interpretations, enforcement and defense" of the Note are to be "commenced in the state and federal courts sitting in the City of New York, Borough of Manhattan."  (Doc. 26, Ex. B at 6-7.)    Opportunity Fund alleges that Epitome failed to comply with the terms of the Note and that the $100,000 loan was never repaid.

In March 2009, a Bill of Sale and Transfer Statement ("Bill of Sale") (Doc. 26, Ex. C) was executed which sold Epitome, or some part of its assets, to Savana, a Delaware corporation with its primary place of business in Pennsylvania.  The Bill of Sale lists Sovereign Bank as the seller. The Bill of Sale indicates that the buyer, Savana, paid Sovereign $400,000 for their purchase, less a $60,000 expense reimbursed by the seller.

Plaintiff alleges that "the March 16, 2009 Bill of Sale [of Epitome to Savana] was in fact a de facto consolidation or merger and/or Savana is merely a continuation of the business of Epitome and/or the March 16, 2009 transaction was entered into fraudulently for the purpose of escaping liability." (Doc. 26 at ¶ 12.)  In Plaintiff's conception of transaction, Savana was a

newly formed company whose first act was the acquisition of Epitome in its entirety. Epitome as previously organized ceased operations in the wake of the transactions. Savana continues to conduct the business of Epitome under the Epitome name. The business continues to serve the same customers. (*See* Doc. 39 at 3-4, Ex. C.) Savana has retained top officers of Epitome to run the business. In particular, Epitome's founder is President of the new company, and Epitome's Chief Financial Officer is the new entity's Chief Administrative Officer. (Doc. 39, Exs. C, D.) Plaintiff has included as Exhibits electronically available public records for Epitome's business entity registration in Pennsylvania (Doc. 39, Ex. A) and Delaware (Doc. 39, Ex. B). Neither evinces any information identifying ownership interests in Epitome.

In contrast, Defendant Savana contends that it purchased only some of Epitome assets, and in doing so did not assume any of Epitome's liabilities or obligations. Defendant characterizes the transaction at issue as a mere asset purchase at a public sale orchestrated by Sovereign Bank, which had seized the assets as collateral when Epitome defaulted on a secured loan. Defendant argues Sovereign's exercise of this post-default remedy was proper under the Uniform Commercial Code and denies that there is any continuity or commonality of ownership between itself and Epitome. (*See* Docs. 35, 40.) Savana has submitted no sworn affidavits in support of these contentions.

In June 2011, Opportunity Fund filed a Complaint asserting breach of contract, conversion, promissory estoppel and unjust enrichment claims against named defendants Epitome and Savana. (Doc. 1.) After multiple futile attempts to serve process on Epitome through the agents so designated in Epitome's Pennsylvania and Delaware business entity records, Plaintiff concluded that Epitome no longer existed due to its purchase by Savana. Plaintiff therefore amended its Complaint to name Savana as the sole defendant. (Doc. 26.)

Defendant Savana now moves to dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, pursuant to Rule 12(b)(3) due to the presence of a forum selection clause in the Note, and pursuant to Rule 12(b)(6) for failure to state a claim on which relief can be granted. The Court discusses each asserted ground for dismissal in turn.

### III. MOTIONS

*A. Personal Jurisdiction*

Defendant Savana seeks dismissal of the claims against it for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). "Because personal jurisdiction is a threshold determination linked to any subsequent order issued by the court," *The Kroger Co. v. Malease Foods Corp*., 437 F.3d 506, 510 (6th Cir. 2006), the Court turns to Defendant's Rule 12(b)(2) argument first. For the reasons set forth below, Defendant's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction is **DENIED**.

### 1. Standard of Review

Plaintiff bears the burden of establishing that personal jurisdiction over a defendant exists. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.,* 503 F.3d 544, 549 (6th Cir. 2007) (citing *Serras v. First Tenn. Bank Nat'l Ass'n,* 875 F.2d 1212, 1214 (6th Cir. 1989)). Where, as here, "the district court relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) motion, rather than resolving the motion after either an evidentiary hearing or limited discovery, the burden on the plaintiff is 'relatively slight,' and 'the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal.'" *Id.* (quoting *Am. Greetings Corp. v. Cohn,* 839 F.2d 1164, 1169 (6th Cir. 1988); *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991)). Plaintiff can make this showing by "'establishing with reasonable particularity sufficient contacts between [the Defendants] and the forum state to

support jurisdiction.'" *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 887 (6th Cir. 2002) (quoting *Provident Nat'l Bank v. California Savings Loan Ass'n,* 819 F.2d 434, 437 (3d Cir. 1987)). In deciding a Rule 12(b)(2) motion, the Court "construe[s] the facts in the light most favorable to the non-moving party," and "**does not weigh** the controverting assertions of the party seeking dismissal." *CompuServe Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir. 1996) (emphasis in original) (citing *Theunissen,* 935 F.2d at 1459.)

## 2. Law and Analysis

### a. Introduction

"Personal jurisdiction over an out-of-state defendant arises from certain minimum contacts with [the forum] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Air Prods.,* 503 F.3d at 549 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)) (internal quotations omitted). When a federal court sits in diversity, "[t]he exercise of personal jurisdiction is valid only if it meets both the state long-arm statute and constitutional due process requirements." *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) (citing *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd.*, 91 F.3d 790, 793 (6th Cir. 1993)).

Here, Plaintiff argues that this Court has jurisdiction over Defendant Savana not because of its own contacts with Ohio, but because it is successor to Epitome. As the Sixth Circuit has explained:

> federal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court.

5

*Estate of Thompson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008)

(quoting *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002)).

Accordingly, in evaluating Defendant's 12(b)(2) motion, the Court assesses first whether

Plaintiff has made the requisite prima facie statutory and constitutional showing with respect

Epitome, and then determines whether personal jurisdiction can be imputed to Savana as

Epitome's successor.

### b. Ohio's Long Arm Statute

Ohio's long-arm statute grants Ohio courts personal jurisdiction over a non-resident

defendant "as to a cause of action arising from the person's ... [t]ransacting any business in

[Ohio]." Ohio Rev. Code § 2307.382(A)(1); *Slate Rock Construction Co., Ltd. v. Admiral Ins.*

*Co.*, No. 2:10-cv-1031, 2011 WL 3841691 at *2 (S.D. Ohio Aug. 30, 2011). The Supreme Court

of Ohio has broadly construed the meaning of "transacting any business in Ohio," which does

not require physical presence in Ohio. *Ky. Oaks Mall Co. v. Mitchell's Formal Wear,* 559 N.E.2d

477, 470-80 (Ohio 1990); *Goldstein v. Christiansen,* 638 N.E.2d 541, 544 (Ohio 1994).

The facts pled regarding Epitome's interactions with Plaintiff constitute "transacting

business in Ohio" within the broad meaning of the statute. Epitome and Opportunity Fund – an

Ohio corporation with its primary place of business in Ohio – together executed the May 2008

Loan and Security Agreement. That agreement lists Opportunity Fund as an "investing entity" in

Epitome and grants Opportunity Fund a security interest in all of Epitome's assets, including its

stock, intellectual property, customer lists, etc., as collateral for Opportunity Fund's investments.

(*See* Doc. 26, Ex. A at 1-5.) Epitome and Opportunity Fund also together executed the June 2008

Secured Promissory Note, which memorializes Plaintiff's six-figure investment in Epitome and

created an ongoing obligation for Epitome to repay that loan with interest. Plaintiff's assertion

6

of these transactions is sufficient to make a prima facie showing that personal jurisdiction over Epitome is authorized under Ohio's long arm statute.

### c. Due Process

In evaluating whether personal jurisdiction comports with due process, the Court must determine whether there are sufficient minimum contacts between the nonresident defendant and the forum state so as not to offend "'traditional notions of fair play and substantial justice.'" *Bird v. Parsons,* 289 F.3d 865, 871-72 (6th Cir. 2002) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). Jurisdiction may be found to exist "either generally, in cases in which a defendant's 'continuous and systematic' conduct within the forum state renders that defendant amenable to suit in any lawsuit brought against it in the forum state, or specifically, in cases in which the subject matter of the lawsuit arises out of or is related to the defendant's contacts with the forum.'" *Thompson*, 545 F.3d at 361 (6th Cir. 2008) (quoting *Nationwide*, 91 F.3d at 793). Here, as there is no indication that Epitome had 'continuous and systematic' contact with Ohio, the relevant inquiry is whether the constitutional requirements for specific jurisdiction are met in this case.

Specific jurisdiction "often may be premised on a single act of the defendant." *Nationwide,* 91 F.3d at 794 (citing *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 222 (1957)). "The nature and quality of the act, as well as the circumstances surrounding its commission, must be examined to determine whether personal jurisdiction exists in each case." *Id*. (citing *Int'l Shoe,* 326 U.S. at 318). The Sixth Circuit has devised a three-part test for determining the "outer limits of *in personam* jurisdiction based on a single act:"

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial

enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Payne v. Motorists' Mut. Ins. Cos.,* 4 F.3d 452, 455 (6th Cir. 1993) (quoting *Southern Mach. Co. v. Mohasco Indus.,* 401 F.2d 374, 381 (6th Cir. 1968)). As discussed below, the Court finds all three requirements satisfied.

i. Purposeful Availment

With respect to interstate contractual obligations, "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Nationwide*, 91 F.3d at 795 (quoting *LAK, Inc. v. Deer Creek Enterprises,* 885 F.2d 1293, 1300 (6th Cir. 1989)) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985)) (internal quotations omitted). The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Id.* (quoting *LAK,* 885 F.2d at 1300) (quoting, *Burger King,* 471 U.S. at 475) (internal quotations omitted). Thus, "the existence of a contract with a citizen of the forum state, standing alone, will not suffice to confer personal jurisdiction over a foreign defendant." *Id.* (citing *Burger King*, 471 U.S. at 475). Rather, "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing ... must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.'" *Id.* (quoting *Burger King,* 471 U.S. at 479).

Epitome's alleged contacts with Ohio satisfy this standard. In executing the Loan and Security Agreement and Secured Promissory Note, Epitome purposely entered an ongoing relationship with the Plaintiff Ohio corporation in order to gain the benefit of Opportunity Fund's

substantial investment capital. Moreover, that relationship contemplated future consequences. These contracts not only created an ongoing obligation for Epitome to repay its debt to Opportunity Fund, but also granted the Ohio company a conditional right to $100,000 worth of Epitome's assets should it default on its obligations. Epitome's contacts are therefore hardly random or fortuitous in nature, but rather a purposeful availment of the privilege of transacting business on Ohio. *See Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.,* 198 F. App'x 425, 432 (6th Cir. 2006) (holding that the Ohio "transacting any business" standard is coextensive with the purposeful availment prong of constitutional analysis).

### ii. Arising from Activities in Forum State

To establish specific jurisdiction, the cause of action at issue must arise from the defendant's activities in the forum state. *Air Prods.*, 503 F.3d at 552. To meet this requirement, a plaintiff must establish at least a "causal connection" between a defendant's activities in the forum state and the harm to the plaintiff. *Neogen,* 282 F.3d at 892. "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *CompuServe,* 89 F.3d at 1267 (citing *Reynolds v. Int'l Amateur Athletic Fed'n,* 23 F.3d 1110, 1119 (6th Cir. 1994)). Here, all of Opportunity Fund's claims arise out of Epitome's alleged failure to repay the Secured Promissory Note executed with the Plaintiff Ohio corporation. This satisfies the second due process requirement.

### iii. Reasonableness

Finally, a defendant's acts or the consequences thereof must have a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable. *Southern Machine Co.,* 401 F.2d at 381. When the first two prongs of the due process inquiry have been satisfied, Ohio courts will "presume the specific assertion of personal jurisdiction was proper."

*Cole v. Mileti,* 133 F.3d 433, 436 (6th Cir. 1998). When making the "reasonableness" inquiry, courts consider several factors, "including 'the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies.'" *CompuServe,* 89 F.3d at 1268 (quoting *Am. Greetings,* 839 F.2d at 1169–70).

As a Pennsylvania-based Delaware corporation, Epitome would certainly be burdened by defending a lawsuit in Ohio. Nevertheless, when it accepted the capital investment from Opportunity Fund and entered into the Loan and Security Agreement and Note, it assumed that obligation. While it may be burdensome to defend a suit in Ohio, Epitome "knew when [it] entered into [business] with [Plaintiff] that [it] was making a connection with Ohio, and presumably … hoped that connection would work to [its] benefit." *Id.*

Moreover, "Ohio has a legitimate interest in protecting the business interests of its citizens," *Bird,* 289 F.3d at 875, and "a strong interest in resolving a dispute involving an Ohio company." *CompuServe,* 89 F.3d at 1268. That another state – here, Pennsylvania or Delaware – would also have an interest in adjudicating these claims "does not override the other factors suggesting that personal jurisdiction in Ohio is reasonable." *Bird,* 289 F.3d at 876.

Given the presumption of reasonableness that arises from the Court's finding of purposeful availment and harm arising out of Epitome's contacts with Ohio, as well as the Court's obligation "construe the facts in the light most favorable to the non-moving party," *CompuServe,* 89 F.3d at 1262, the Court finds Epitome's connections with Ohio substantial enough to make personal jurisdiction reasonable. Plaintiff's allegations therefore meet all three elements necessary to establish specific jurisdiction over Epitome consistent with due process.

**d. Successor Jurisdiction**

Having found the exercise of personal jurisdiction proper with respect to Epitome, the Court now examines whether Savana may be subject to personal jurisdiction as Epitome's successor. As discussed above, the Sixth Circuit has explained that "it is compatible with due process for a court to exercise personal jurisdiction over … an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court." *Thompson*, 545 F.3d at 362. *See Hitachi Medical Sys. Am., Inc. v. Branch*, No. 5:09-cv-01575, 2010 WL 816344 at *5 (N.D. Ohio Mar. 4, 2010) ("The exercise of jurisdiction over an alter ego is compatible with due process because a corporation and its alter ego are the *same entity*-thus, the jurisdictional contacts of one are the jurisdictional contacts of the other for the purposes of the International Shoe due process analysis.") (emphasis in original) (quoting *Sys. Div., Inc. v. Teknek Elecs., Ltd.*, 253 Fed. Appx. 31, 27 (Fed.Cir. 2007). To apply the successor theory of personal jurisdiction in a diversity action, courts look to the forum state's rules of successor liability. *See Thompson*, 545 F.3d at 362 (applying Ohio law governing piercing the corporate veil in an alter-ego personal jurisdiction analysis).

In Ohio, "[t]he well-recognized general rule of successor liability provides that the purchaser of a corporation's assets is not liable for the debts and obligations of the seller corporation." *Welco Indus., Inc. v. Applied Cos*., 617 N.E.2d 1129, 1132 (Ohio 1993) (citing *Flaugher v. Cone Automatic Mach. Co*., 507 N.E.2d 331 (Ohio 1987)). The Ohio Supreme Court has identified discrete exceptions to the general rule when: "(1) the buyer expressly or impliedly agrees to assume such liability; (2) the transaction amounts to a *de facto* consolidation or merger; (3) the buyer corporation is merely a continuation of the seller corporation; or (4) the transaction is entered into fraudulently for the purpose of escaping liability." *Id*. at 1133 (citing *Flaugher*,

507 N.E.2d at 334). Plaintiff argues that the de facto merger, mere continuation, and fraudulent transaction exceptions apply in this case.

### i. De Facto Merger

A de facto merger is "a transaction that results in the dissolution of the predecessor corporation and is in the nature of a total absorption of the previous business into the successor." *Welco*, 617 N.E.2d at 1134 (citing *Flaugher*, 507 N.E.2d at 340 (A.W. Sweeney, J., dissenting)). The hallmarks of de facto merger include: "(1) the continuation of the previous business activity and corporate personnel, (2) a continuity of shareholders resulting from a sale of assets in exchange for stock, (3) the immediate or rapid dissolution of the predecessor corporation, and (4) the assumption by the purchasing corporation of all liabilities and obligations ordinarily necessary to continue the predecessor's business operations." *Id*. (citing *Turner v. Bituminous Cas. Co.*, 244 N.W.2d 873, 887 (Mich. 1976)).

Here Plaintiff has alleged that "the March 16, 2009 Bill of Sale [of Epitome to Savana] was in fact a de facto consolidation or merger." To this end, Plaintiff contends that Savana purchased Epitome's business operation in its entirety, continues to conduct Epitome's business and serve its customers under the Epitome name, and has retained much of Epitome's senior management. Plaintiff also alleges that Epitome ceased operations and was essentially dissolved upon its acquisition by Savana. Although Plaintiff makes no allegations regarding the payment details of the transaction nor the specific identities of the respective stockholders and directors of Savana and Epitome, it is unclear how Opportunity Fund would have access to such information for two privately held corporations without the benefit of discovery. Indeed, the publicly available business entity registration documents for Epitome, both in Pennsylvania and

Delaware, reveal no information whatsoever about the identity of the ownership interests in the corporation. (*See* Doc. 39, Exs. A, B.)

Defendant's contrary contention that there is no continuity of ownership and no assumption of ordinary business liabilities or obligations is of no moment: the Court "does not weigh the controverting assertions of the party seeking dismissal" in evaluating a Rule 12(b)(2) motion. *CompuServe,* 89 F.3d at 1262. Nor is the Court persuaded by Defendant's argument that, under the Ohio Court of Appeals' decision in *Rondy & Co. v. Plastic Lumber Co.*, 2011 WL 5377741, C.A. No. 25548, 2011 -Ohio- 5775 (Ohio Ct. App. Nov. 9, 2011), Sovereign Bank's involvement bars this transaction from being a de facto merger as a matter of law.

*Plastic Lumber* considers a situation in which a manufacturer and seller of plastic lumber products, Plastic Lumber, defaulted on a bank loan secured by the company's assets. Plastic Lumber and the bank, Huntington, entered into a formal agreement by which Plastic Lumber surrendered all its assets to be liquidated in an orderly fashion by a third-party liquidating officer. The majority – though not all – of those assets were sold to Bright Idea, a newly formed company fully owned by Plastic Lumber's primary shareholder. Unlike Plastic Lumber, Bright Idea's business was the sale and assembly of plastic lumber products, not their manufacture. Significantly, the prices of Plastic Lumber's various assets were all either set by the independent liquidating officer and the bank, or determined via legitimate public auction. Fully one quarter of Plastic Lumber's assets were sold to third parties, rather than to Bright Idea. *Plastic Lumber*, 2011 WL 5377741 at *1. Under these facts, the Plastic Lumber Court found that "the transaction at issue was not 'in the nature of a total absorption of the previous business into the successor[,]' and thus d[id] not even seem to fit within the general definition of a de facto merger

as defined by the *Welco* Court." *Id.* at *3 (first alteration in original) (quoting *Welco*, 617 N.E.2d at 1134).

Savana argues that this case is analogous to *Plastic Lumber* in every respect because it bought only some of Epitome's assets – for cash, not stock – at a public sale of collateral seized by an independent senior creditor exercising a proper remedy and acting in good faith. This characterization of the transaction, however, has yet to be proven. Indeed, at this stage in the proceedings, this Court cannot even weigh Defendant's assertions against Plaintiff's allegations that Savana purchased and absorbed Epitome's business in its entirety. *CompuServe,* 89 F.3d at 1262. Accordingly, given that the nature of the sale and Savana's current business operation have not yet been established, the Court cannot find that undefined involvement of Sovereign in the transaction precludes de facto merger as a matter of law.

### ii. Mere Continuation and Transaction to Escape Liability

The "mere continuation" exception permits successor liability when the "the acquiring corporation is just a new hat for, or a reincarnation of, the acquired corporation." *Plastic Lumber*, 2011 WL 5377741 at *4 (quoting *Welco*, 617 N.E.2d at 1134). The mere continuation exception is based on "the continuation of the corporate entity, not the business operation." *Id.* (quoting *Welco*, 617 N.E.2d at 1134). This would be the case, for example, "when one corporation sells its assets to another corporation with the same people owning both corporations." *Id.* (quoting *Welco*, 617 N.E.2d at 1134). Because "[t]his type of transaction is executed to escape liabilities of the predecessor corporation, … the inadequacy of consideration is one of the indicia of mere continuation." *Id.* (quoting *Welco*, 617 N.E.2d at 1134).

The fourth exception, entering into a transaction with fraudulent intent to escape liability, has similar hallmarks: "[i]ndicia of fraud include inadequate consideration and lack of good

faith." *Welco*, 617 N.E.2d at 1134 (citing *Turner*, 244 N.W.2d at 887 (Coleman, J., dissenting)).

Plaintiff has alleged that "Savana is merely a continuation of the business of Epitome and/or the March 16, 2009 transaction was entered into fraudulently for the purpose of escaping liability." (Doc. 26 at ¶ 12.) As evidence of this, Plaintiff points to the dissolution of Epitome, as well as Savana's retention of Epitome's senior staff, including the installation of Epitome's founder as President of the new company and Epitome's Chief Financial Officer as Chief Administrative officer. (Doc. 39 at 3-4, Exs. C, D.) Although continuation of the business operation is itself insufficient to establish successor liability via mere continuation, it makes Plaintiff's allegations of corporate continuation more plausible. Again, given that Savana and Epitome are both privately held corporations, it is unclear how Plaintiff could have made more specific factual allegations as to the identities of their respective stockholders without the aid of discovery. (*See* Epitome's Pennsylvania and Delaware business entity registrations, Doc. 39, Ex. A, Ex. B (containing no information regarding corporate ownership).)

In addition, Plaintiff has presented facts which, when construed in the light most favorable to the plaintiff, *CompuServe,* 89 F.3d at 1262, raise the specter of inadequate consideration – the tell-tale sign that implicates both mere continuation and an impermissible transaction to escape liability. Specifically, the Bill of Sale indicates that Savana paid the seller $400,000, less $60,000 in expenses reimbursed by the seller. If indeed Savana only paid $340,000 to purchase Epitome in its entirety, including all of its assets, that amount would seem remarkably little consideration in light of the logical inference that Epitome's assets were sufficient to secure at least $440,000 in loans not nine months earlier.[2]

---

[2] The inference is that, if indeed this was a post-default sale of collateral, the value of the collateral sold would not exceed the amount of the total debt to Sovereign plus expenses. If expenses account for $60,000, the debt to

Defendant asserts that there was no continuation of ownership, and argues that, because it purchased Epitome's assets from Sovereign, *Plastic Lumber* precludes recourse to the mere continuation theory as a matter of law. As in the de facto merger context, this argument is likewise unavailing. To begin with, as discussed above, Defendant's characterization of its relationship to Epitome and of the transaction as a purchase of collateral seized by a senior creditor are not weighed at this stage of the litigation. *CompuServe*, 89 F.3d at 1262.

But even if the Court were to infer from the Bill of Sale that the Epitome was sold in order to pay off the company's outstanding debt to Sovereign, those facts would not *ipso facto* foreclose a finding of successor liability. The Ohio Court of Appeals' decision in *Plastic Lumber* is premised on a number of very particular findings of fact which have not yet been established in this case.[3] Specifically, the *Plastic Lumber* court held that that the mere continuation exception did not apply where it was undisputed that:

> (1) Huntington was a secured party that held a valid blanket lien on Plastic Lumber's assets; (2) Huntington instructed Plastic Lumber to hire a restructuring agent, who ultimately became a liquidating agent, so that Huntington might realize the most money possible from the sale of Plastic Lumber's assets; (3) Huntington was entitled, as the secured creditor, to proceed in the manner it did; (4) the assets of Plastic Lumber that Bright Idea acquired were acquired through the third party agent and from Huntington; and (5) the assets were sold for fair and reasonable price given the nature of the assets and the circumstances under which they were sold.

*Plastic Lumber*, 2011 WL 5377741 at *4. On that record, the court found "no evidence … which suggested that Bright Idea purchased the assets of Plastic Lumber for inadequate consideration,

---

Sovereign would total at least $340,000. Furthermore it appears that at least two other loans were secured by Epitome's assets: Opportunity Fund's $100,000 capital investment and an unknown amount from Vision Opportunity Master Fund, Ltd., the other investing entity named in the loan and security agreement. (*See* Doc. 26, Ex. A at 29.) Together, that would mean at least $440,000 worth of loans were secured in Epitome's assets.

[3] The facts of the case are set forth in greater detail in Part III.A.2.d.i, *supra*. *See also Plastic Lumber*, 2011 WL 5377741 at *1.

or that the transaction was conducted to escape the liabilities of Plastic Lumber." *Id*. at *5.

Here, in contrast, the legitimacy of Epitome's sale and the adequacy of consideration *are* in dispute. Without the hallmarks of formality, legitimacy, and adequacy that characterize the asset seizure, liquidation and public auction in *Plastic Lumber*, Sovereign's apparent listing in the chain of  ownership does not foreclose a mere continuation theory of successor liability. Indeed, it would be incredibly problematic if a company could shirk all secured debt obligations save one by nominally surrendering all its assets to a chosen creditor and then, clothed in a new corporate form, buying those assets back for the low price of a single outstanding debt.  Thus, at this pre-evidentiary stage, the Court does not find recourse to mere continuation barred as a matter of law. If this case is indeed analogous to *Plastic Lumber*, Savana will have the opportunity to so prove as the record develops.

In light of the above, Plaintiff's allegations are sufficient to make a prima facie showing of successor status for the purposes of establishing personal jurisdiction over Savana. *See Dow Corning Corp. v. Jie Xiao, et al.*, No. 11-10008-BC, 2011 WL 2015517 at *15 (E.D. Mich. May 20, 2011) (finding allegations that defendant is a successor created to shield assets from liability to be sufficient for prima facie showing of personal jurisdiction); *Gorge v. Rapid Advance, LLC*, No. 10-11474, 2011 WL 679842 at *4-5 (E.D. Mich. Feb. 16, 2011) (finding allegations that defendant is a successor by virtue of "mere continuation" theory sufficient for prima facie showing of personal jurisdiction); *Weather Underground, Inc. v. Navigation Catalyst Sys. Inc*., No. 09-10756, 2011 WL 2414415 at *5 (E.D. Mich. June 10, 2011) (finding allegations of defendant's alter-ego status sufficient for prima facie showing of personal jurisdiction).

The Court notes, however, that Plaintiff's prima facie showing is merely that. A threshold determination that personal jurisdiction exists "does not relieve [the plaintiff] […] at the trial of

the case in chief from proving the facts upon which jurisdiction is based by a preponderance of the evidence.'" *Hitachi*, 2010 WL 816344 at *8 (quoting *Serras*, F.2d at 1215) (changes in original) (internal quotations omitted).

### e. Conclusion

Plaintiff has met its burden and made the requisite prima facie showing that this Court's personal jurisdiction over Savana is proper. Defendant's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction is therefore **DENIED**.

### B. Forum Selection Clause

Defendant moves pursuant to Federal Rule of Civil Procedure 12(b)(3) to dismiss this action in light of the forum selection clause contained in the Note. The Sixth Circuit, however, has stated unequivocally that "a forum selection clause should not be enforced through dismissal for improper venue under FRCP 12(b)(3) because these clauses do not deprive the court of proper venue." *Wong v. PartyGaming Ltd.,* 589 F.3d 821, 829 (6th Cir. 2009). Accordingly, the Court declines to use Rule 12(b)(3) to that effect here. Defendant's motion to dismiss pursuant to Rule 12(b)(3) is **DENIED**.

Because Defendant has made no other motions regarding the Note's forum selection clause, the Court's ability to consider this matter is severely constrained.[4] When presented with a procedurally improper 12(b)(3) motion asserting a forum selection clause defense, the Court may, *sua sponte*, analyze the question under the common law doctrine of forum non conveniens.

---

[4] Forum non conveniens or a 28 U.S.C. § 1404(a) motion to transfer venue would both have been appropriate mechanisms through which to enforce the forum selection clause at issue in this case. In addition, there is debate among district courts in this Circuit as to whether a forum selection clause may be enforced via a Rule 12(b)(6) Motion. *See Carillo v. ITFCO Industries, Inc.*, 2011 WL 4538079 (M.D. Tenn. Sept. 29, 2011) (collecting cases and deciding that 12(b)(6) is not a proper mechanism for forum selection clause enforcement). As Defendant has made no such argument, however, this Court does not consider the question here.

*Wong v. Partygaming Ltd.,* 589 F.3d 821, 830 (6th Cir. 2009). A court balances three factors in the forum non conveniens analysis: (1) the existence of an adequate alternate forum; (2) any relevant public factors that favor another venue; and (3) any relevant private factors that favor another venue. *See Stewart v. Dow Chemical Co.,* 865 F.2d 103, 106 (6th Cir. 1989). *Sua sponte* invocation of the doctrine is appropriate if the court already possesses "facts relevant to the issue of forum non conveniens." *Estate of Thomson,* 545 F.3d 357, 364-65 (6th Cir. 2008) (citing *Chamber v. NASCO,* 501 U.S. 32, 44 (1991)).

Here, the Court does not possess sufficient information to weigh the doctrine's factors and make a determination. To assess whether dismissal under forum non conveniens is warranted, the Court must assess public and private factors, of which the validity of a forum selection clause in a contract is only one. *See Kerobo v. Southwestern Clean Fuels, Corp.*, 285 F.3d 531, 537-38 (6th Cir. 2002) (explaining, in the context of a motion to transfer, that when a district court weighs public and private factors related to venue, "[a] forum-selection clause in a contract is one of the factors to consider in this calculus [and] 'should receive neither dispositive consideration... nor no consideration'") (quoting *Steward Org. Inc. v. Ricon Corp.*, 487 U.S. 22, 31 (1988)). Accordingly, "[i]t would be unfair to both parties to make this determination based on the arguments presented in their briefs that only address facts relevant to the standards for 12(b) motions, not forum non conveniens." *Arcelormittal Tubular Prods. Shelby, Inc. v. Uranie Int'l, S.A.*, No. 1:09-cv-1821, 2011 WL 1230271 at *4 (N.D. Ohio Mar. 30, 2011) (denying enforcement of forum selection clause via Rule 12(b)(3) and declining to analyze forum non conveniens *sua sponte*). As such, the court declines at this time to analyze the forum selection clause defense, *sua sponte*, under the doctrine of forum non conveniens.

*C. Failure to State a Claim*

Finally, Defendant Savana moves to dismiss Plaintiff's action for "failure to state a claim on which relief can be granted" pursuant to Federal Rule of Civil Procedure 12(b)(6). Specifically, Defendant argues that Plaintiff's successor liability claims are inadequately pled and fail as a matter of law. Defendant also argues that each of the underlying claims to which successor liability is pendant – Breach of Contract (Count I), Conversion (Count II), Promissory Estoppel (Count III) and Unjust Enrichment (Count IV) – also fail as a matter of law under the facts alleged. Defendant's motion to dismiss is **GRANTED** as to Count II and **DENIED** as to Counts I, III and IV.

1. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Although a plaintiff need not plead specific facts, the complaint must "give the defendant fair notice of what the claim is, and the grounds upon which it rests." *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). The plaintiff's ground for relief must entail more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff has satisfied Rule 12(b)(6) if he or she pled enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

In evaluating a Rule 12(b)(6) motion, the Court accepts Plaintiff's factual allegations as true, and "the complaint is construed liberally in favor of the party opposing the motion." *Davis*

*H. Elliot Co. v. Caribbean Util. Co., Ltd.*, 513 F.2d 1176, 1182 (6th Cir. 1975) (citing *L'Orange v. Medical Protective Co.*, 394 F.2d 57, 59 (6th Cir. 1968)). "Furthermore, such a motion should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

## 2. Law and Analysis

### a. Choice of Law

In briefing this Motion to Dismiss, the parties have argued the sufficiency of Plaintiff's claims under *Ohio* law. Yet the contract at issue – the Note – contains a choice of law clause which is unequivocal in its selection of New York law to govern "[a]ll questions concerning the construction, validity, enforcement and interpretation of th[e] Note." (Doc. 26, Ex. B, pp.6-7.)[5] Thus, this Court cannot not take as given that Ohio law should be applied this case.

"In a diversity case, a federal district court 'is obligated to apply the choice of law rules of the state in which it sits.'" *Slate Rock Constr.*, 2011 WL 3841691 at *2 (quoting *Security Ins. Co. v. Kevin Tucker & Assoc.*, 64 F.3d 1001, 1005 (6th Cir. 1995)). Ohio has adopted § 187 of the Restatement (Second) of Conflict of Laws, under which "parties' choice-of-law provisions are enforceable unless [1] 'the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or [2] application of the law of the chosen state will be contrary to the fundamental policy of a state having a greater

---

[5] The Note's choice of law clause states:

> All questions concerning the construction, validity, enforcement and interpretation of this Note shall be governed by and construed and enforced in accordance with the internal laws of the State of New York, without regard to the principles of conflicts of law thereof.

(Doc. 26, Ex. B at 6.)

material interest in the issue than the chosen state and such state would be the state of the applicable law in the absence of a choice by the parties.'" *Century Bus. Servs., Inc. v. Barton*, 967 N.E.2d 782, 793 (Ohio App. 2011) (quoting *Schulke Radio Prods., Ltd. v. Midwestern Broad. Co.*, 453 N.E.2d 683, syllabus (Ohio 1983)).[6]  Neither exception applies here.

Given New York State's apparent lack of connection to either the parties or the transaction, the first exception would initially seem germane. As the Sixth Circuit has made clear, however, this exception "rarely, if ever, appl[ies] as a practical matter because contracting parties rarely make a choice of law without a good reason." *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 924 n.2 (6th Cir. 2006). Rather, "[t]his exception is merely intended to preclude, for example the application of 'foreign law which has been chosen by the parties in the spirit of adventure or to provide mental exercise for the judge.' " *Id.* (quoting Rest.2d Conflict of Laws § 187 cmt. f). The selection of New York law to govern a financial instrument is hardly so "adventurous" a choice. Thus, as it is not the function of the judiciary to speculate as to the mindset of the parties, this Court will presume they acted on a rational basis. *See* Rest.2d Conflict of Laws § 187 cmt. f ("The parties to a multistate contract may have a reasonable basis for choosing a state with which the contract has no substantial relationship. For example, .... parties to a contract for the transportation of goods by sea between two countries with relatively undeveloped legal systems should be permitted to submit their contract to some well-known and highly elaborated commercial law.").

---

[6] This analysis is applied "even when the parties have set forth a choice of law and indicated that it is to be applied 'without regard to principles of conflicts [sic] of law[s].'" *Century Bus. Servs.*, 967 N.E.2d at 793 n.6 (alterations in original) (quoting *Greif Packaging, LLC v. Ryder Integrated Logistics, Inc.*, No. L-09-1259, 2010 WL 3610588 at *3 (Ohio App. Sept. 17, 2010)).

Nor does the second exception apply. Given the involvement of an Ohio corporation, Ohio may indeed have a materially greater interest in the outcome of this dispute than does New York, which has no connection to either party. There is, however, no indication that New York law with respect to successor liability or common law contract and quasi-contract claims would be fundamentally contrary to Ohio public policy.

Having determined that the Note's choice of law clause falls within neither enumerated exception, the Court finds the clause enforceable. Accordingly, the proper substantive law to apply is that of New York, and Plaintiff's assertion of successor liability against Savana, as well is its underlying claims for breach of contract (Count I), conversion (Count II), promissory estoppel (Count III), and unjust enrichment (Count IV), must be analyzed for adequacy under New York law. The Court will consider each *seriatim*.

### b. New York Successor Liability

New York applies the same general rules for successor liability as does Ohio. Thus, "a corporation that purchases the assets of another corporation is generally not liable for the seller's liabilities," *New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 209 (2d Cir. 2006), unless: "'(1) [the buyer] expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations.'" *Id.* (quoting *Schumacher v. Richards Shear Co.,* 451 N.E.2d 195, 198 (N.Y. 1983)).

### i. De Facto Merger

The de facto merger exception "originated in cases where the seller's shareholders retained their interest in the transferred assets through an ownership interest in the purchasing

corporation, while freeing the assets from the claims of the seller's creditors by disguising the transaction as an asset sale. *Cargo Partner AG v. Albatrans Inc.,* 207 F.Supp.2d 86, 94-95 (S.D.N.Y. 2002), *aff'd* 352 F.3d 41 (2d Cir. 2003). In such cases, "courts determined that the form of the transaction did not accurately portray its substance, and they imposed successor liability upon the purchaser." *Id.* Although "[t]he New York Court of Appeals has not directly addressed whether a de facto merger creates liability for a successor corporation, … [the Second Circuit] and lower New York courts have held that it does." *Nat'l Serv. Industries*, 460 F.3d at 209 (quoting *Cargo Partner AG v. Albatrans, Inc.,* 352 F.3d 41, 45 (2d Cir. 2003)).

A de facto merger occurs "when a transaction, although not in form a merger, is in substance 'a consolidation or merger of seller and purchaser.'" *Nat'l Serv. Industries*, 460 F.3d at 209 (internal quotations omitted) (quoting *Cargo Partner AG,* 352 F.3d at 45). Under New York law, "hallmarks of a de facto merger include: (1) continuity of ownership; (2) cessation of ordinary business and dissolution of the acquired corporation as soon as possible; (3) assumption by the purchaser of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and (4) continuity of management, personnel, physical location, assets, and general business operation." *Nat'l Serv. Industries*, 460 F.3d at 209. "In New York, courts have found the continuity of ownership requirement satisfied where the shareholders of the selling corporation retain only an indirect interest in the assets that were sold." *Hayden Capital USA, LLC v. Northstar Agri Indus., LLC*, No. 11 Civ. 594(DAB), 2012 WL 1449257, *5 (S.D.N.Y. Apr. 23, 2012) (citing *In re New York City Asbestos Litig.,* 15 A.D.3d 254, 256 (N.Y. 2005) ("The first criterion, continuity of ownership, exists where the shareholders of the predecessor corporation become direct or indirect shareholders of the successor corporation as the result of the successor's purchase of the predecessor's assets, as

occurs in a stock-for-assets transaction."); *Cargo Partner,* 207 F.Supp.2d at 104–105 (S.D.N.Y. 2002) ("The fact that the seller's owners retain their interest in the supposedly sold assets (through their ownership interest in the purchaser) *is* the 'substance' which makes the transaction inequitable.") (emphasis in original)).

As the Court has discussed at length, *see* Part III.A.2.d.i., *supra*, Plaintiff's allegations related to the post-transaction cessation of Epitome, the uninterrupted continuation of Epitome's business operations, the transfer of Epitome's assets in full, and the continuity of management in the form of several of Epitome's senior officers, are sufficient to make Rule 12(b)(2)'s required prima facie showing that the de facto merger exception applies. The Court likewise concludes that these allegations, when accepted as true and construed in the light most favorable to the Plaintiff, *Davis H. Elliot*, 513 F.2d at 1182, are sufficient to make Plaintiff's assertion of de facto merger "plausible on its face." *Iqbal*, 556 U.S. at 663, and "give the defendant fair notice of what the claim is, and the grounds upon which it rests." *Nader*, 545 F.3d at 470.

Given that the retention of an indirect interest in sold assets can establish continuity of ownership under New York law, *Hayden Capital USA*, 2012 WL 1449257 at *5, the undefined involvement of Sovereign in the sale of Epitome does not as a matter of law preclude a finding of de facto merger. Although Plaintiff will ultimately have to prove that Epitome's stockholders did retain such an interest, it is unclear how Opportunity Fund, as a third party, could access information regarding the details of Savana's purchase of Epitome or the respective identities of those private corporations' stockholders without the benefit of discovery. *Cf. Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir. 1988) ("Especially in a case in which there has been no discovery, courts have been reluctant to dismiss the action where the facts underlying the claims are within the defendant's control.") (discussing the exception to Fed. R.

Civ. P. 9(b)'s heightened pleading standard for fraud in cases "where the information is only within the opposing party's knowledge"). Accordingly, reading all inferences in favor of the non-moving party, the Court cannot say that Plaintiff can prove no set of facts which would entitle it to relief from Savana on the basis of de facto merger. *Davis H. Elliot Co.*, 513 F.2d at 1182 (6th Cir. 1975) (quoting *Conley*, 355 U.S. at 45-46).

ii. Mere Continuation and Transaction to Escape Liability

 The mere continuation exception "is designed to prevent a situation whereby the specific purpose of acquiring assets is to place those assets out of reach of the predecessor's creditors.... Thus, the underlying theory of the exception is that[ ] if [a] corporation goes through a mere change in form without a significant change in substance, it should not be allowed to escape liability." *Hayden Capital USA*, 2012 WL 1449257 at *5 (alterations in original) (internal quotations omitted) (quoting *Societe Anonyme Dauphitex v. Schoenfelder Corp.*, No. 07 Civ. 489, 2007 WL 3253592 at *6 (S.D.N.Y Nov. 2, 2007)).

The mere continuation rule applies in New York when "the purchasing corporation … represent[s] merely a 'new hat' for the seller. That is, it is not simply the business of the original corporation which continues, but the corporate entity itself. " *Cargo Partner,* 207 F.Supp.2d at 95 (internal citations omitted) (quoting *Ladjevardian v. Laidlaw-Coggeshall, Inc.*, 431 F.Supp. 834, 839 (S.D.N.Y. 1977)).  Mere continuation "requires actual dissolution of the seller," *Cargo Partner,* 207 F.Supp.2d at 95 (citing *Shumacher*, 59 N.Y.2d at 244): "[t]he successor-buyer is not in existence prior to the purchase of the predecessor's assets, and the predecessor-seller does not survive the sale of the assets." *Alvarado v. Dreis & Krump Mfg. Co*, 1 Misc.3d 912(A), 2004 WL 258117 at *2 (N.Y. Super. Ct. Jan. 23, 2004)) (citing *Greenlee v. Sherman,* 142 A.D.2d 472, 476 (N.Y.A.D. 1989)). Other factors "considered by New York courts to be indicative of the

'mere continuation' exception are that the business of the successor is the same as the business of the predecessor, the business employs the same work force, and the predecessor's officers and directors become the officers and directors of the successor." *Id*. (citing *Mitchell v. Suburban Propane Gas Corp.,* 182 A.D.2d 934 (N.Y.A.D. 1992)).

In New York, the de facto and mere continuation exceptions have largely subsumed the exception for transactions undertaken to escape liability has been largely subsumed by. *See Cargo Partner,* 207 F.Supp.2d 86, 94-95 (discussing the mere continuation and de facto merger exceptions). New York courts have noted, however, that "'a purchase of assets may ordinarily be arranged so as to insulate the purchaser from the seller's liabilities' so long as the purchase is 'for fair consideration and undertaken in good faith as a *bone fide* transaction." *Connecticut Indem. Co. v. 21st Century Transp. Co., Inc.*, No. 99-cv-7735(ILG), 2001 WL 868340 at *7 (E.D.N.Y Jul. 27, 2001) (quoting *Gardner v. Fyr-Fyter Co.*, 47 A.D.2d 591, 591 (N.Y.A.D. 1975)). Thus, the absence of fair consideration and good faith can weigh in favor of finding that the transaction was, in substance, one "with a concomitant assumption of liabilities." *Gardener*, 47 A.D.2d at 591 (holding that questions as to whether an asset sale was 'for fair consideration and undertaken in good faith as a bona fide transaction" created "factual issues which preclude the granting of summary judgment" regarding de facto merger).

Here, as discussed in Part III.A.2.d, *supra*, Plaintiff has alleged that Savana was a new corporation whose first act was the purchase of Epitome in whole, and that Epitome was dissolved following the transaction. Plaintiff has also alleged that Savana continued Epitome's business to the same customers under the management of Epitome senior officers. In addition, Plaintiff argues the transaction was merely an attempt to remove assets from the reach of Epitome creditors like itself, an allegation supported by the seemingly low purchase price paid

by Savana.[7] While not conclusive evidence of the continuation of the corporate entity, these are "factors considered by New York courts to be indicative of the 'mere continuation' exception." *Id*. That plaintiff did not plead specific detail as to stockholders in common is not fatal where, as here, the identity of such stockholders identity is not publicly accessible for privately held corporations absent discovery. *Cf. Michaels Bldg. Co.*, 848 F.2d at 680 ("Especially in a case in which there has been no discovery, courts have been reluctant to dismiss the action where the facts underlying the claims are within the defendant's control.") (discussing exceptions to Fed. R. Civ. P. 9(b)'s heightened pleading standard for "information … only within the opposing party's knowledge"). Reading all inferences in the light most favorable to the non-moving party, Plaintiff's assertion of mere continuation is plausible and the Court cannot say that Plaintiff can prove no set of facts that would establish successor liability via mere continuation. *Davis H. Elliot Co.*, 513 F.2d at 1182 (quoting *Conley*, 355 U.S. at 45-46).

### iii. Conclusion

Plaintiff's allegations are therefore sufficient at this stage of the litigation to sustain claims against Savana predicated on Defendant's successor liability. Thus, to the extent Plaintiff's allegations state claims against Eptiome, they likewise state claims against Savana.

#### c. Breach of Contract

Count I of Plaintiff's Amended Complaint asserts claims against Savana, as successor to Eptiome, for breach of contract. To establish a claim for breach of contract under New York law, a party must prove: "(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *Command Cinema Corp. v. VCA Labs, Inc*., 464 F.Supp.2d 191, 198 (quoting *Terwilliger v. Terwilliger*, 206 F.3d 240, 245-46 (2d Cir. 2000)). Plaintiff has

---

[7] *See* text accompanying note 2, *supra*.

alleged that: (1) the Note constitutes a valid and enforceable contract; (2) Opportunity Fund substantially performed on that contract in making the $100,000 loan to Epitome; (3) Epitome breached the contract by failing to repay the loan; and (4) Opportunity Fund has been damaged by the breach in the amount of $100,000 plus interest. Thus, Plaintiff has stated a claim against Epitome, and, by extension, a claim against Savana as successor to Epitome, on which relief can be granted. Savana's argument that Savana was not party to the Note simply begs again the question of claims predicated on successor liability, which this Court has addressed and dispatched at length, above. Defendant's motion to dismiss Count I pursuant to Rule 12(b)(6) is therefore **DENIED**.

### d. Conversion

Count II of Plaintiff's Amended Complaint asserts claims against Savana, as successor to Eptiome, for conversion. Conversion is "any unauthorized exercise of dominion or control over property by one who is not the owner of the property that interferes with and is in defiance of a superior possessory right of another in the property." *Command Cinema*, 464 F.Supp.2d at 199 (quoting *Schwartz v. Capital Liquidators, Inc.*, 984 F.2d 53, 53 (2d Cir. 1993)). Under New York Law, "[a] conversion claim may only succeed if the party alleges a wrong that is distinct from any contractual obligations." *Id*. (citing *Briarpatch Ltd. L.P. v. Geisler Roberdeau, Inc.*, 148 F.Supp.2d 321, 328 (S.D.N.Y. 2001)). Thus, "[t]here is no conversion action where damages are sought for breach of contract." *Id*. (citing *Peters Griffin Woodward, Inc. v. WCSC, Inc.*, 88 A.D.2d 883 (N.Y.A.D. 1982). Here, Plaintiff has alleged no wrong distinct from Epitome's breach in failing to repay the $100,000 Note. Plaintiff's claim for conversion therefore fails as a matter of law. Defendant's motion to dismiss Count II pursuant to Rule 12(b)(6) **is GRANTED**.

### e. Promissory Estoppel

Count III of Plaintiff's Amended Complaint asserts claims against Savana, as successor to Eptiome, for promissory estoppel. A cause of action for promissory estoppel under New York law "requires the plaintiff to prove three elements: 1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance." *Ashland Inc. v. Morgan Stanley & Co., Inc. .,* 700 F.Supp.2d 453, 472 (S.D.N.Y. 2010) (quoting *Kaye v. Grossman,* 202 F.3d 611, 615 (2d Cir.2000)). A claim for promissory estoppel "may proceed jointly with a breach of contract claim only where it is not clear that a valid contract exists." *Brenner v. Brenner*, No. CV 10-4857, 2012 WL 3597247 at *7 (E.D.N.Y. Aug. 20, 2012) (quoting *BLD Prods., LLC v. Viacom, Inc.,* No. 10 Civ. 2625, 2011 WL 1327340 at *15 (S.D.N.Y. Mar. 31, 2011)). Where a contract's enforceability is at issue, however, "plaintiffs are 'entitled to plead the alternative theory of promissory estoppel in the event it is later determined there is no enforceable contract.'" *Id.* (quoting *Polargrid LLC v. Videsh Sanchar Nigam Ltd.,* No. 04-cv-9578, 2006 WL 903184 at *3 (S.D.N.Y. Apr. 7, 2006)).

Here, Defendant Savana has yet to answer to Plaintiff's Complaint. Accordingly, it is not yet clear whether Defendant will contest the validity and enforceability of the Note. To the extent that Defendant chooses to contest this issue, Plaintiff is "entitled to plead the alternative theory of promissory estoppel." *Id.* In the event it is later determined there is no enforceable contract, Plaintiff has stated a claim for promissory estoppel against Epitome – and by extension Savana – in alleging that: (1) the Note contains a clear promise to repay the $100,000 loan with interest by August 31, 2008; (2) Plaintiff's reliance was reasonable and foreseeable in light of Plaintiff's business relationship with Epitome; and (3) Plaintiff was injured by loss of those

funds as a result of its reliance.   Defendant's motion to dismiss Count III pursuant to Rule 12(b)(6) is **DENIED**.

### f. Unjust Enrichment

Count IV of Plaintiff's Amended Complaint asserts claims against Savana, as successor to Eptiome, for unjust enrichment.  Pursuant to New York law, "where a plaintiff has paid the defendant money pursuant to an unenforceable agreement, he may obtain restitution damages under an implied-in-law contract theory where there is found to be no enforceable contract, but in equity and good conscience the defendant should not retain the amounts paid to him." *Kermaneshah v. Kermanshah*, No. 08-cv-409, 2010 WL 1904135 at *6 (S.D.N.Y. May 11, 2010) (citing *Hamlin Beach Camping, Catering, & Concessions Corp. v. State,* 303 A.D.2d 849, 358 (N.Y.A.D. 2003); *RTC Props., Inc. v. Bio Res., Ltd.,* 295 A.D.2d 285, 744 N.Y.S.2d 173 (N.Y.A.D. 2002)). While a plaintiff "initially may raise both breach of contract and unjust enrichment claims, a plaintiff cannot prevail on both because the determination that an enforceable contract existed necessarily precludes an unjust enrichment claim based on the same underlying agreement."  *Id.*

Here, Plaintiff alleges that it paid $100,000 to Epitome on the expectation that it would repay those moneys, with interest, pursuant to the Note – an act which Epitome allegedly failed to perform.  At this early stage in the litigation, there has yet been no finding as to whether the Note constitutes a valid, enforceable contract.  Accordingly, Plaintiff may maintain its claim for unjust enrichment against Epitome – and by extension, Savana – unless and until the Note is found to be an enforceable contract.  Defendant's motion to dismiss Count IV pursuant to Rule 12(b)(6) is therefore **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED** as to Count II

of the Plaintiff's Amended Complaint and **DENIED** as to Counts I, III and IV.

       **IT IS SO ORDERED.**

**s/ Algenon L. Marbley**
**Algenon L. Marbley**
**United States District Judge**

**Dated: November 27, 2012**