**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **THE OPPORTUNITY FUND, LLC** | : | |
| Plaintiff, | : | Case No. 2:11-CV-528 |
| v. | : | JUDGE ALGENON L. MARBLEY |
| **SAVANA, INC.,** | : | Magistrate Judge Deavers |
| Defendant. | : | |

**OPINION AND ORDER**

**I. INTRODUCTION**

This matter is before the Court on Defendant's Motion for Summary Judgment. (Doc. 66). For the reasons stated below, Defendant's Motion is **DENIED.**

**II. BACKGROUND**

*A. Factual Background*

In 2003, Vincent Rogusky founded Epitome. Epitome subsequently acquired business process management software from Capmark Financial Group, which it named Epitome Systems. On October 30, 2003, Epitome obtained a line of credit and note from Sovereign Bank for $2,000,000. Sovereign Bank subsequently became Epitome's senior lender, and held a security interest collateralized by Epitome's assets. The bank also had the right to assert Uniform Commercial Code ("UCC") remedies should Epitome default.

On or about May 14, 2008, Epitome and Sovereign Bank entered into a Second Loan Agreement. To obtain additional capital for that loan, Epitome obtained "bridge loans" from different investors. Plaintiff, The Opportunity Fund, LLC ("Opportunity Fund"), an Ohio

1

company, became an "investing entity" in Epitome Systems, Inc.  This transaction was memorialized with a Loan and Security Agreement ("LSA") that granted some number of investing entities, including Opportunity Fund, a security interest in Epitome's assets as collateral for funds lent.  According to the terms of the Agreement, collateral assets consisted of a comprehensive list of Epitome's current and future personal property, including intangibles like stock, intellectual property, computer software rights, and customer lists.  In connection with the Loan and Security Agreement, Epitome executed a Secured Promissory Note (the "Note") in which it promised to repay Opportunity Fund the lent sum of $100,000 plus interest on or before August 31, 2008.

On October 4, 2008, Sovereign Bank obtained a Confession of Judgment against Epitome.  The bank alleged that Epitome had an unpaid principal amount exceeding $1.52 million, and that the total amount due was greater than $1.86 million.

Michael Sanchez was a passive investor in Epitome, having purchased 100,000 shares of the company for $100,000 in 2005.  Between late 2008 and early 2009, Sanchez checked on his Epitome investment, and discovered that the business was in default to Sovereign Bank, and that the bank had obtained a Confession of Judgment against Epitome.  Sanchez asked Sovereign Bank about the plans for the assets, and the bank informed him that it would conduct some kind of foreclosure process and some kind of auction.

On February 17, 2009, Sanchez formed Vansan Partners, LLC, which later became Savana, Inc. (hereinafter "Savana").  Shortly thereafter, Savana purchased a limited license from Epitome for $60,000 to conduct due diligence on Eptiome's software.  Following its due diligence inquiry, Savana informed Sovereign Bank that it would be interested in purchasing Epitome's assets at a public sale conducted by the bank, pursuant to Article 9 of the UCC.

Savana also told the bank that it would make a minimum bid of $400,000, and would not assume any of Epitome's liabilities unless the assumption of such liabilities was expressly agreed to in writing.

On March 16, 2009, Sovereign Bank held an auction to sell Epitome's assets. The sale was held in accordance with the Sovereign Bank's Bidding Procedures. A Bill of Sale and Transfer Statement was executed which sold some of Epitome's assets and its "trade name," Epitome Systems, to Savana. The Bill of Sale expressly excluded any liabilities or obligations to Opportunity Fund. The Bill of Sale lists Sovereign Bank as the seller. The Bill of Sale indicates that the buyer, Savana, paid Sovereign $400,000 in cash for their purchase, less a $60,000 expense reimbursed by the seller. No stock or shares of stock were exchanged for the purchase of Epitome's assets at the sale. Opportunity Fund alleges that it did not learn about the sale until 2010, when it found an article on the Internet discussing the sale.

Post-purchase, there was some overlap between Epitome and Savana. Savana purchased the majority of the physical and intangible assets of Epitome. Between March 2009 and October 2011, four of Epitome's Officers and Directors began working at Savana, three of whom work there currently.[1] Savana hired several additional Epitome employees. Though Savana obtained the trade name Epitome Systems, by the fourth quarter of 2009, Savana rebranded the software as Savana BPM.

*B. Procedural Background*

On June 15, 2011, Opportunity Fund filed a Complaint asserting breach of contract, conversion, promissory estoppel and unjust enrichment claims against named defendants Epitome and Savana. (Doc. 1). After multiple futile attempts to serve process on Epitome through the agents so designated in Epitome's Pennsylvania and Delaware business entity

---

[1] As of September 23, 2013, the date on which Plaintiff's Response was filed.

records, Plaintiff concluded that Epitome no longer existed due to its purchase by Savana. On March 7, 2012, Plaintiff therefore amended its Complaint to name Savana as the sole defendant. (Doc. 26). Savana subsequently filed a Motion to Dismiss for Failure to State a Claim, pursuant to rules 12(b)(2), 12(b)(3), and (12)(b)(6). (Doc. 34). This Court granted Defendant's motion to dismiss only as to Plaintiff's conversion claim. (Doc. 47). Additionally, the Court determined that application of New York law was appropriate. (*See id.*, at 21-23).

Defendant filed its Motion for Summary Judgment on August 30, 2013. (Doc. 66). On July 24, 2014, this Court held oral argument on the Defendant's Motion. This matter is, therefore, ripe for review.

### III. STANDARD OF REVIEW

Summary judgment is proper if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if proof of that fact would establish one of the elements of a claim and would affect the application of governing law to the rights of the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citing *Johnson v. Soulis, Wyo.*, 542 P.2d 867, 872 (1975)).

A movant for summary judgment meets its initial burden "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Dixon v. Anderson*, 928 F.2d 212, 216 n. 5 (6th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986)). At that point, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Id.* (quoting Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). It is not, however, the role of the trial court to "resolve factual disputes by weighing conflicting evidence because it is the jury's role to assess

4

the probative value of the evidence." *Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 230 (6th Cir. 1990) (citing *Stone v. William Beaumont Hosp.,* 782 F.2d 609, 615 n. 5 (6th Cir. 1986); *Kennett-Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir. 1980)). All evidence and reasonable inferences must be viewed in the light most favorable to the party opposing the motion. *Pucci v. Nineteenth Dist. Court*, 628 F.3d 752, 759 (6th Cir. 2010) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### IV. LAW & ANALYSIS

#### A.  *Successor Liability*

The contract at the basis of the parties' dispute contains a choice of law clause that unequivocally selects New York law to govern the Note. (*See Order on Mtn. to Dismiss*, Doc. 47, at 21-23). Thus, the Court shall apply New York law in its analysis of the issues presented on summary judgment. Pursuant to "New York law and traditional common law, a corporation that purchases the assets of another corporation is generally not liable for the seller's liabilities." *N.Y. v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 209 (2d Cir. 2006). Successor liability attaches where: "'(1) [the buyer] expressly or impliedly assumed the predecessor's tort liability[;] (2) there was a consolidation or merger of seller and purchaser[;] (3) the purchasing corporation was a mere continuation of the selling corporation[;] or (4) the transaction is entered into fraudulently to escape such obligations.'" *Id.* (quoting *Schumacher v. Richards Shear Co.,* 451 N.E.2d 195, 198 (N.Y. 1983)). The party that asserts successor liability bears "the burden of proving facts which bring the case within one of [the four] exceptions." *Marenyi v. Packard Press Corp.*, No. 90-CV-4439 (CSH), 1994 WL 16000129, at *6 (S.D.N.Y. June 9, 1994).

5

Plaintiff has not alleged that Defendant expressly or impliedly assumed Epitome's obligation under the Loan and Security Agreement and Note, nor that the transaction was entered into fraudulently to escape such obligations. The Court, therefore, need only address the two remaining prongs.

1. De Facto Merger

The de facto merger exception "originated in cases where the seller's shareholders retained their interest in the transferred assets through an ownership interest in the purchasing corporation, while freeing the assets from the claims of the seller's creditors by disguising the transaction as an asset sale." *Cargo Partner AG v. Albatrans Inc.,* 207 F. Supp. 2d 86, 94-95 (S.D.N.Y. 2002), *aff'd* 352 F.3d 41 (2d Cir. 2003). In such cases, "courts determined that the form of the transaction did not accurately portray its substance, and they imposed successor liability upon the purchaser." *Id.* Although "[t]he New York Court of Appeals has not directly addressed whether a de facto merger creates liability for a successor corporation, … [the Second Circuit] and lower New York courts have held that it does." *Nat'l Serv. Industries*, 460 F.3d at 209 (quoting *Cargo Partner AG v. Albatrans, Inc.,* 352 F.3d 41, 45 (2d Cir. 2003)).

A de facto merger occurs "when a transaction, although not in form a merger, is in substance 'a consolidation or merger of seller and purchaser.'" *Nat'l Serv. Industries*, 460 F.3d at 209 (internal quotations omitted) (quoting *Cargo Partner AG,* 352 F.3d at 45). Under New York law, "hallmarks of a de facto merger include: (1) continuity of ownership; (2) cessation of ordinary business and dissolution of the acquired corporation as soon as possible; (3) assumption by the purchaser of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and (4) continuity of management, personnel, physical location, assets, and general business operation." *Nat'l Serv. Industries*, 460 F.3d at 209. New

York courts "have found the continuity of ownership requirement satisfied where the shareholders of the selling corporation retain only an indirect interest in the assets that were sold." *Hayden Capital USA, LLC v. Northstar Agri Indus., LLC*, No. 11 Civ. 594 (DAB), 2012 WL 1449257, *5 (S.D.N.Y. Apr. 23, 2012) (citing *In re New York City Asbestos Litig.,* 15 A.D.3d 254, 256 (N.Y. 2005) ("The first criterion, continuity of ownership, exists where the shareholders of the predecessor corporation become direct or indirect shareholders of the successor corporation as the result of the successor's purchase of the predecessor's assets, as occurs in a stock-for-assets transaction."); *Cargo Partner,* 207 F. Supp. 2d at 104–105 (S.D.N.Y. 2002) ("The fact that the seller's owners retain their interest in the supposedly sold assets (through their ownership interest in the purchaser) *is* the 'substance' which makes the transaction inequitable.") (emphasis in original)).

Savana argues that the undisputed facts show that there was not continuity of ownership, and thus, no de facto merger. According to Savana, it bid on, and purchased with cash, particular Epitome assets at a public auction held by Sovereign Bank. Defendant further relies on other undisputed facts: Savana expressly declined to assume all of Epitome's liabilities, including the Note; none of Epitome's stock was transferred pursuant to the Article 9 sale by Sovereign Bank; and none of Epitome's stocks or shares was exchanged for the purchase of Epitome's assets at the Article 9 sale. Savana argues that Sanchez's role as CEO of Savana and passive investor in Epitome cannot establish continuity of ownership, particularly because Sanchez did not obtain shares in Savana as part of the sale. Once Epitome collapsed, Sanchez lost his investment in the company, which allegedly equaled only 0.010%. Defendant insists that Plaintiff cannot demonstrate that any type of shareholder received stock or ownership interest in Savana as a

7

result of the sale. Given the lack of evidence to show otherwise, Savana claims that Plaintiff is unable to prove the de facto merger exception.

Opportunity Fund first asserts that Defendant's Article 9 arguments relating to the sale by Sovereign Bank must be rejected. *See Perception, Inc. v. Silicon*, 2010 WL 3463098, at *6 (N.D.N.Y. 2010) ("[c]ourts have rejected the view that foreclosure sale under Section 9-504 of the UCC precludes the imposition of successor liability."). Plaintiff argues that reasonable jurors could find under the facts *sub judice*, that there was continuity of ownership. Plaintiff contends that there were no shares of Savana available for Sanchez to acquire. According to Opportunity Fund, Sanchez transitioned from a passive investor to an active investor by creating a plan that involved Epitome selling its assets to another company he had created, with Sanchez speaking directly to the Bank in the process. Thus, Plaintiff claims that Sanchez acquired everything from Epitome, leaving Epitome's creditors with nothing.

The Court finds that there are genuine issues of material fact that preclude summary judgment. Sanchez's direct involvement in the purchase of Epitome and its assets, and his ultimate acquisition of the company, allowed Sanchez to become an active investor in the company. A reasonable juror could find that Savana's acquisition of Epitome, and the details of the resulting company operations, demonstrate a continuity of ownership. Thus, the Court cannot grant summary judgment on the basis of de facto merger.

2. <u>Mere Continuation of the Selling Corporation</u>

The mere continuation exception "is designed to prevent a situation whereby the specific purpose of acquiring assets is to place those assets out of reach of the predecessor's creditors.... Thus, the underlying theory of the exception is that[ ] if [a] corporation goes through a mere change in form without a significant change in substance, it should not be allowed to escape

8

liability." *Hayden Capital USA*, 2012 WL 1449257, at *5 (alterations in original) (internal quotations omitted) (quoting *Societe Anonyme Dauphitex v. Schoenfelder Corp.*, No. 07 Civ. 489, 2007 WL 3253592, at *6 (S.D.N.Y Nov. 2, 2007)).

The mere continuation rule applies in New York when "the purchasing corporation … represent[s] merely a 'new hat' for the seller. That is, it is not simply the business of the original corporation which continues, but the corporate entity itself. " *Cargo Partner,* 207 F. Supp. 2d at 95 (internal citations omitted) (quoting *Ladjevardian v. Laidlaw-Coggeshall, Inc*., 431 F. Supp. 834, 839 (S.D.N.Y. 1977)). Mere continuation "requires actual dissolution of the seller," *Cargo Partner,* 207 F. Supp. 2d at 95 (citing *Shumacher*, 59 N.Y.2d at 244): "[t]he successor-buyer is not in existence prior to the purchase of the predecessor's assets, and the predecessor-seller does not survive the sale of the assets." *Alvarado v. Dreis & Krump Mfg. Co*, 1 Misc.3d 912(A), 2004 WL 258117, at *2 (N.Y. Super. Ct. Jan. 23, 2004)) (citing *Greenlee v. Sherman,* 142 A.D.2d 472, 476 (N.Y.A.D. 1989)). Other factors "considered by New York courts to be indicative of the 'mere continuation' exception are that the business of the successor is the same as the business of the predecessor, the business employs the same work force, and the predecessor's officers and directors become the officers and directors of the successor." *Id*. (citing *Mitchell v. Suburban Propane Gas Corp.,* 182 A.D.2d 934 (N.Y.A.D. 1992)).

New York courts have noted that "'a purchase of assets may ordinarily be arranged so as to insulate the purchaser from the seller's liabilities' so long as the purchase is 'for fair consideration and undertaken in good faith as a *bona fide* transaction." *Connecticut Indem. Co. v. 21st Century Transp. Co., Inc.*, No. 99-cv-7735(ILG), 2001 WL 868340, at *7 (E.D.N.Y Jul. 27, 2001) (quoting *Gardner v. Fyr-Fyter Co.*, 47 A.D.2d 591, 591 (N.Y.A.D. 1975)). Thus, the absence of fair consideration and good faith can weigh in favor of finding that the transaction

was, in substance, one "with a concomitant assumption of liabilities." *Gardener*, 47 A.D.2d at 591 (holding that questions as to whether an asset sale was "for fair consideration and undertaken in good faith as a bona fide transaction" created "factual issues which preclude the granting of summary judgment" regarding de facto merger).

Reasserting its argument under de facto merger, Defendant argues that the continuity of ownership also cannot be met under mere continuation. Defendant points to the Bill of Sale, which does not mention the dissolution of Epitome, and shows that Epitome survived the transaction. Citing *Diaz v. South Bend Lathe*, Defendant insists that the argument that Epitome became a shell of its former self does not show that Plaintiff has met its burden, because the facts do not indicate that Epitome was dissolved at the time of the sale. 707 F. Supp. 97, 100 (E.D.N.Y. 1989) ("[i]f the predecessor corporation continues to exist after the transaction, in however gossamer a form, the mere continuation exception is not applicable."). Defendant further relies on various undisputed facts to support its claim that Plaintiff cannot meet any of the remaining factors necessary to meet its burden under this exception. (*See Def.'s Mot. for Summ. J.*, Doc. 66-1 at 18). Finally, Defendant contends that the inquiry is not whether Savana continued part of Epitome's business, but whether it continued the corporation itself.

Opportunity Fund alleges that there are genuine issues of material fact that preclude summary judgment. Plaintiff argues that two of Epitome's lead officers served as officers of Savana. Epitome's CEO and founder, Vincent Rogusky, became Savana's President and Operating Officer, while Epitome's Chief Technology Officer took over the same position at Savana. Plaintiff asserts that most of Epitome's key employees went to work at Savana. Moreover, as recently as July 2013, customers searching online for BPM software could find Epitome's homepage, which automatically redirected users to Savana's website. Opportunity

10

Fund claims that, since its purchase of Epitome, Savana has only marketed and sold Epitome BPM software, using nearly all of Epitome's office equipment in the process.  Facts that Savana has colored as irrelevant are, according to Opportunity Fund, necessary for this Court to consider in determining that summary judgment is improper.

Plaintiff has shown that there are genuine issues of material fact that prevent this Court from granting summary judgment.  The factual issues surrounding the Savana's acquisition of Epitome suggests that there may have been at least some continuity of ownership, pointing to a mere continuation of Epitome under the umbrella of Savana.  The overlap is significant enough that a reasonable juror could find Plaintiff has demonstrated that Savana's purchase of Epitome was simply a change in Epitome's form, but not a change in substance.  Thus, Defendant's Motion for Summary Judgment is **DENIED**.

### B.  *Underlying Claims*[2]

To establish a claim for breach of contract under New York law, a party must prove: "(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *Command Cinema Corp. v. VCA Labs, Inc*., 464 F. Supp. 2d 191, 198 (quoting *Terwilliger v. Terwilliger,* 206 F.3d 240, 245-46 (2d Cir. 2000)).  Under the Note, one of the "Events of Default" is:

> (ii) [Epitome] shall fail in any material respect to observe or perform any of its obligations owed to [Opportunity Fund] under

---

[2] Plaintiff's Complaint also alleges promissory estoppel and unjust enrichment.  Those claims, however, are not actionable since neither party argues that the contract is invalid.  As the Court noted in its Order on Defendant's Motion to Dismiss, pursuant to New York law, "where a plaintiff has paid the defendant money pursuant to an unenforceable agreement, he may obtain restitution damages under an implied-in-law contract theory where there is found to be no enforceable contract, but in equity and good conscience the defendant should not retain the amounts paid to him." *Kermaneshah v. Kermanshah*, No. 08-cv-409, 2010 WL 1904135, at *6 (S.D.N.Y. May 11, 2010) (citing *Hamlin Beach Camping, Catering, & Concessions Corp. v. State,* 303 A.D.2d 849, 358 (N.Y.A.D. 2003); *RTC Props., Inc. v. Bio Res., Ltd.,* 295 A.D.2d 285, 744 N.Y.S.2d 173 (N.Y.A.D. 2002)). While a plaintiff "initially may raise both breach of contract and unjust enrichment claims, a plaintiff cannot prevail on both because the determination that an enforceable contract existed necessarily precludes an unjust enrichment claim based on the same underlying agreement." *Id.*  (*See* Doc. 47 at 31).

> this Note or [LSA] or shall breach in any material respect any covenant, agreement, representation or warranty contained in this Note or [LSA] and such failure or breach shall not have been remedied within 30 days after the date on which written notice of such failure or breach shall have been delivered by [Opportunity Fund] to [Epitome].

(Doc. 66-12, Ex. J).

Defendant argues that Opportunity Fund failed to provide written notice to Epitome, and thus did not satisfy the requirements of the Note. Moreover, Defendant claims that Plaintiff has not produced any evidence of written notice, and Mr. Crawford, Epitome's corporate representative, was unable to recall any written notice during his deposition. During a subsequent deposition, Crawford stated that he did not have any documentation showing that there was notice from Opportunity Fund.

Plaintiff contends that Defendant's notice argument fails for various reasons. Opportunity Fund insists that it could not serve notice on Epitome because it ceased to exist; all of its assets were sold, and most of Epitome's previous employees were then working for Savana. Thus, Plaintiff asserts that Savana's argument that Epitome existed as a legal entity is deceitful, at best. Plaintiff further argues that, from the time its lawsuit was initiated to the present, Epitome is still listed as an active corporation on the Pennsylvania Secretary of State's online records. When Opportunity Fund attempted to forward a copy of its Complaint to Epitome's last known address, it was unsuccessful. Moreover, when Plaintiff learned that Epitome was in default, Savana had already acquired all of Epitome's assets. Plaintiff claims that its breach of contract claim should not be denied simply because Epitome essentially ceased to exist on its own, without giving notice to Opportunity Fund, and subsequently began operating under Savana's umbrella.

Though Defendant correctly stated that Opportunity Fund did not provide written notice to Epitome, Plaintiff has demonstrated that it made a sufficient attempt to give notice to Defendant. Moreover, it is unclear in what capacity Epitome exists. Plaintiff points out that Epitome is still considered an active corporation by the Pennsylvania Secretary of State, further muddying the waters of the transition from Epitome to Savana. Without a clearer delineation between Epitome and Savana, a reasonable juror could find that Opportunity Fund acted properly in its alleged attempt to deliver notice. Those issues of material fact, therefore, bar this Court from granting summary judgment.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion is **DENIED.**

**IT IS SO ORDERED.**

    **s/Algenon L. Marbley**
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: August 19, 2014**